And you may proceed when ready. Good morning, and may it please the Court. I'm Dominic Dre, and with Michael Wertheim, I represent the appellant, Sunsweet Growers. I'll endeavor to reserve three minutes for rebuttal. That's good. The Teamsters negotiated a collective bargaining agreement on behalf of Plaintiff and her coworkers. That agreement includes a dispute resolution provision with which Plaintiff conceitedly did not comply. As a result, her claims should be dismissed. That is, in fact, the conclusion that the District Court reached with respect to the one claim over which it retained jurisdiction. The easiest disposition of this case is the dispute resolution provision. Each of Plaintiff's claims is a grievance within the meaning of that provision. The District Court refused to enforce it because it concluded that waiver was not clear and unmistakable. That is not only incorrect, but it is, at worst, a question of contract interpretation, which itself triggers complete preemption under the LMRA. In fact, the District Court actually recognized that fact, E.R. 23, before saying that the complete preemption did not apply because it was raised as a defense, E.R. 24. This Court and the Supreme Court have expressly rejected that. In Lyons, this Court explained that, quote, removal is always permitted, even if the Federal issue is raised as a defense and does not appear on the face of the Plaintiff's well-pleaded complaint. And once this case is removed, the correct resolution is to — But how do you deal with — that's one thing for removal, but that's different with respect to the Supreme Court's reasoning in Caterpillar. So how do you deal with Caterpillar? Yes. So the District Court relies on this footnoted comment in Caterpillar, which is, frankly, its use of that quote is incorrect. Caterpillar recognizes that complete preemption is a corollary to the well-pleaded complaint rule that allows removal even if the complaint does not itself invoke either the CBA or any Federal law. So Caterpillar itself actually stands for the opposite proposition that the District Court used it for. And cases since then have only confirmed Caterpillar's holding in this Court and in the Supreme Court. Let me find the exact language from Caterpillar. The interpretation and application of collective bargaining agreement is completely preempted. It is, quote, an independent corollary to the well-pleaded complaint rule. They're referring to cases in which the plaintiff's claims require interpretation of the collective bargaining agreement. And Caterpillar very carefully says that's different when it's a defense. And if the defense — it only arises — the interpretive question only arises as a defense, there is no preemption. That's not exactly right. So Caterpillar involved individual contracts, not a CBA at all. So begin with the fact that Caterpillar is not —  And the argument by the defendants in that case was that the CBA essentially waived or preempted the individual contracts. And the Court said even if that's true, that's something for the State court to decide. Well, I think that's almost — Unless it's unmistakably clear. I think that — so the defendants argued that the subsequent CBA actually governed these folks' employment. And the Supreme Court answered that and said, no, it doesn't. They are just individual contract employees. So that was actually not for the State court. What it left for the State court is the interpretation of that individual agreement, whether or not it conferred the particular benefits. And the defendants' argument that the CBA constituted a waiver or an override of the individual contracts. And the Court said that defense would not result in preemption. Yes, that's right, Your Honor. But the crucial fact in Caterpillar is that they were governed by individual contracts. And the Supreme Court decided that issue. It said the individual contracts control. And here plaintiffs' claims are statutory. Correct. So here there's no argument that the CBA controls, that a plaintiff is covered by the collective bargaining agreement. So we're not in the Caterpillar situation. We have the normal application of complete preemption. And, yes, a plaintiff does what plaintiffs always do, which is pleads without referencing her CBA in order to keep the case in federal court. This is exactly 14 Penn Plaza, by the way. I mean, the waiver in this, I don't know if they wrote it with an eye on 14 Penn Plaza or not, but the waiver in this case, the dispute resolution provision in this case, says exactly what it did in 14 Penn, that all claims, and it lists the California Labor Code. This is fairly important as well, that it lists the California Labor Code and the Private Attorney General Act in this dispute resolution provision and says that all those claims are, quote, exclusively subject to this dispute resolution provision, which shall be the sole and exclusive remedy for such claims. That's at ER 223. This is exactly the kind of waiver language that exists in contracts that are heavily negotiated. The court in 14 Penn, I think it's at page 257, points out that labor organizations get something in exchange for offering a dispute resolution provision. That is one of the things of value that the Teamsters in this instance are able to offer to SunSuite, which has a great relationship with its union, thankfully. And in exchange, they're able to extract other benefits. If this court were to say that that waiver is not clear and unmistakable, as the district court said, or that, or I should say, moreover, that it's not even a question of contract interpretation that allows you to vindicate your rights in federal court, labor unions lose the ability to negotiate things of value in exchange for dispute resolution provisions. But don't the waiver provision, don't the cases speak about clear and unmistakable waiver of statutory rights? So it's not just because, I mean, there's an analog to arbitration-type cases, right? Yes. And in those cases, the waiver is not just that we submitted to a grievance process through collective bargaining, but that you are expressly waiving your statutory rights to recover under State law. Thank you for the correction, Your Honor. That's exactly right. Our case is not a waiver of rights. It is a selection of the process of a forum in which to vindicate those rights. So plaintiff doesn't give up any of her rights under the dispute resolution provision. All she agrees to is to proceed through this four-step process in order to vindicate those rights. So the first step is meeting with the supervisor, who then reports to her and the union. The union, by the way, hasn't joined this grievance, which is informative. Then the second step, the union rep and the employer meet. This is all at 223 through 225 of the excerpts. All of these claims could be vindicated through that process. That's why the district court dismissed the one claim that they found was governed by the CBA. But that is a different question from whether the rest of the district court's decision was correct. Actually, I don't think it's all that different. The plaintiff's claims are based on California law, do not at most require reference to and not interpretation of the CBA. I understand that you've made arguments that the State law claims require interpretation of the CBA, but I don't see any arguments that explain, other than that they're sort of involved in that or that they refer to provisions of the CBA, what exactly needs to be interpreted in the CBA to resolve the plaintiff's affirmative claims. Yes, so all of these claims arise under the dispute resolution provision, which Steelworkers, through Luke, through Gardner Denver. Right, and that binds the union and it binds the employee with respect to her claims that are preempted under 301. No, that suffices to remove all of the claims to federal court as completely preempted. Here's the language from Luke at page 219. Perhaps the most harmful aspect of the Wisconsin decision is that it would allow essentially the same suit to be brought directly in state court, which is what plaintiff is trying to do, without first exhausting the grievance procedures established in the bargaining agreement. That's the Supreme Court, Luke 471 U.S. at 219. Since Steelworkers in 1960, courts have recognized that if a dispute resolution covers the dispute, that is completely preempted and removable to federal court. Now, in this case, it goes incredibly quickly after that point because of the conceded failure, 1ER25, the conceded failure of plaintiff to comply with, among other things, the timeline in which to register her grievance. So in this case, the complete preemption operates, I think, most transparently through this dispute resolution provision and the Steelworkers trio of cases that recognize that if it arises under a dispute, if the dispute resolution provision encompasses your claim clearly and unmistakably, which actually I think 14 Penn Plaza says it in even more straightforward language, that it need only be explicitly stated that the dispute resolution covers certain claims, then those are completely preempted. They're removable to federal court. In this case, it then ends the case because dismissal is appropriate. That's also Luke and then this court's decision in Albino, which we cite in the reply brief, that says that if you haven't exhausted the contractual dispute resolution provision, then you are out of court, that it is dismissed. You know, the argument from well-pleaded complaint opens a ton of loopholes, including the possibility, as this court said in Columbia Export, of evading one's collective bargaining agreement, for individual employees to undercut the union and the employer by pleading outside of the collective bargaining agreement, which is very easy to do. You could always just cite to state law. So to close that loophole, Congress created complete preemption. And I don't know. This court is kind of like the lucky draw court because the two statutes that have that are ERISA and the LMRA. And this morning sitting, it collected them both. I don't know how lucky we are, but go ahead. The conceded effect of that is to result in dismissal, which should occur in this case. I will hold on to my time for rebuttal. We'll round up to four minutes. May it please the court, Glenn Danis for plaintiff and appellee. Well, I just want to respond to a couple of points and then explain why I think the order should be affirmed. Responding to a couple of points that my friend on the other side made would be, number one, that the only real U.S. Supreme Court case that's in there that really supports them in any way is Luke. And the Luke case is easily distinguishable based on the fact that there was a tort dressing up a contract claim, and the contract claim was a bad faith claim. The court said our resolution today is based on the fact that the duty or the scope of the duty of the defendant is grounded entirely in the contract. To put it differently and to put it in the way that this court has held in cases such as the en banc decisions of Shirk or Alaskan Ailerons versus Shirk and Kramer, that claim couldn't go forward without the contract. This is a very different situation in this case, which is why cases like Kramer, Shirk, and Burnside have all come out the way that they have. The U.S. Supreme Court in Levitas and Lingle, and in the Lingle case I'd like to point out, this is Levitas versus Bradshaw and Lingle versus Magic Chef, both California cases dealing with the labor code. The U.S. Supreme Court in Lingle said, even if dispute resolution pursuant to a collective bargaining agreement on the one hand and state law on the other would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is independent of the agreement for Section 301 purposes. There has been absolutely no argument. Counsel, let me ask. So how does – is there then a clear and unmistakable waiver component to this at all? Because if you have these parallel claims that are arising under state law, labor code, and a grievance process, is there a situation where someone has submitted to a grievance procedure and despite wanting to bring forward labor code violations there would still be preemption? Well, you know, I'll answer that question in two ways. Number one, I think that the other side will certainly have the opportunity to try and compel arbitration under other agreements or under other legal concepts in state court. They'll be able to try and compel arbitration. But set arbitration aside. But if you were – and just so I understand the question correctly, you were asking about the clear and unmistakable waiver having to do with the grievance resolution procedure?  So I think this Court spoke to that best in Dall v. Albertson's, a case that the other side neglected to mention, from 2007. Dall v. Albertson's was based entirely on Justice Brennan's reasoning in the – I'm sorry. Justice Brennan's reasoning where he said that the – that there's a countervailing policy that the plaintiff is the master of his or her complaint. I understand that the other side was saying, well, this allows all sorts of mischief to allow the plaintiff to plead around it. And if there were a clear and conspicuous grievance policy, perhaps that would be sufficient. And that's what the Court was saying in Dall. But when you don't have a clear and conspicuous grievance policy or grievance procedure, rather, as there wasn't here – and there's no argument that it wasn't clear and on its face. The other side's argument in its brief, its only point to respond to the fact that the grievance procedure is muddled and totally ambiguous is the fact that, well, perhaps it could allow for additional rights. Perhaps the appeal at State – Step 3 or at Step 4 is something that was just an extra right. Extra rights are not unknown in the law. What it is, though, is it makes quite clear, and reading Dall makes quite clear the fact that if there isn't that sort of clarity, the Court is not going to say, you know, the plaintiff is the master, the complaint is shoved aside. Justice Brennan said that, you know, the plaintiff would be master of nothing if the other side as a defense could simply inject Federal issues at any time and therefore make the complaint one that sounds in Federal law. The case – just to make a couple of other points, on the LMRA preemption, on the first prong of Burnside here, it has to arise entirely from the CBA. And other cases or scenarios where it's not sufficient would be where a claim just refers to a CBA-defined right, like Levitas, where claims run parallel to a CBA right, like in Lingle, or where claims are based on the same facts as the CBA and Balcorda from this Court. We already talked about Luke a little bit, and, you know, I would just end by saying that there's no interpretation required of the agreement for any of the substantive claims. That's something that the other side essentially was going around Levitas, which says that there has to be an active dispute over contract terms, and Shirk from this Court that says that there can't simply be a hypothetical connection between the contract terms that are being raised by the defendant and the claims that are actually being brought. All we saw here are exactly these sorts of hypothetical connections to things that had nothing to do with the allegations about pyramiding and about, you know, whether sick leave was available, which was not at all what the actual claims as alleged were. Unless the panel has any other questions, I think having even some additional time, that would be it for me. I guess just on the jurisdictional question, since the District Court found original jurisdiction over one of the claims, that one of the claims was preempted and then declined to exercise supplemental jurisdiction over the other ones, that should give us leeway to review the entire order under Carlsbad. Do you agree or disagree? I can't. I'd like to disagree, but I don't think I can. You know, all I would say is that BP was quite circumspect about Carlsbad and said that Carlsbad has been called into question for a number of different reasons. I do think that supplemental jurisdiction under Carlsbad is something that allows you to read the entire order. I appreciate your candor. Would this have been a different situation had all the claims been found not preempted? Would we then not have appellate review over that type of order? Absolutely. There's a 2001 decision from this court. The name just escapes me, but I was in a deep last night where it talks about the fact that if you're in a supplemental jurisdiction scenario and all of the claims, the federal claims, were dismissed on jurisdictional grounds, that there is then absolutely no discretion for the court to hear or to entertain appeal from the order. It would only be if the federal claims were dismissed on their merits. All right. Thank you, counsel, very much.  Thank you. Just a few quick points on rebuttal. I'd like to take up the issue about whether or not the terms of the dispute resolution provision are clear and unmistakable or expressly stated in 14 Penn Plaza terms. The district court found that it was somehow ambiguous because party is defined to mean the parties to the agreement, the Teamsters on the one hand and SunSuite on the other. And then at step four of the grievance process, it says it switches from saying grievance to saying party, meaning only the union has the ability to force arbitration. Bingo. That's exactly correct. It's unambiguous. He correctly applied it. Even if it were, though, somehow unclear, there are a couple of problems with that. One, that is not the waiver language. Where the court is finding an ambiguity about who gets to take the fourth step isn't the waiver language. The waiver language is what I read a moment ago that says, all such claims are exclusively subject to this dispute resolution procedure, which will be the stolen exclusive remedy. In other words, the district court found an ambiguity, wrongly, but in language that isn't the language that forecloses going to court instead of pursuing the dispute resolution provision. Moreover, there is nothing ambiguous about that. Unlike some of the other cases in which there is a dispute, this case actually enumerates the statutes that are covered. It is, in that way, almost like I said, this is your deciding 14 Penn Plaza again. It goes through and lists the specific statutes as well as the contract and says things arising under these statutes are covered by this, and this is your stolen exclusive, exclusively subject. Twice says it. So any effort to gin up ambiguity doesn't work on its own terms. But then even if you had an ambiguity. Counsel, can I ask? Yes. If the union had grieved on behalf of the plaintiff, we would be in arbitration land, right, at that point, because the grievance process results in arbitration at the end of it. Is that right? Right. So Your Honor's question assumes that all the other prerequisites, like timing, are satisfied. Right. So if they had timely filed, yes, exactly, we could be in arbitration right now. So the fact that the grievance process is referring to the union and not to an individual employee, why doesn't that make it ambiguous, sufficient to not require preemption? Well, grievance includes the employee unambiguously. I might have the language at my fingertips. Okay, grievance means a claim by an employee or the union, so that unambiguously includes either of them. And then it sets forth the procedure. But the procedure contemplates the union taking action and not the individual employee, or no?  It's a basic tenet of labor law that the union is the party to the collective bargaining agreement, not the individual employee. Correct. And it's the union that has the right to go to arbitration, not the individual employee. An individual employee, absent very different language than is in the standard collective bargaining agreement, cannot require the union to go to arbitration. Correct. So in this case, to apply that in this case, the union is the party, and it is in the defined terms here as well, but also as a matter of standard labor contract. The union is the party. The individual can also bring a grievance without the union, which is the circumstance we're in at this very moment. Unions can join it at any point in the process and can compel. I mean, this is all set forth, again, if there's any question about the clarity of this contractual waiver, please see 223 in the excerpts. And then the ensuing two pages go through the process, which you can see for yourself. But, again, that process, even if the process was a bit murky, we aren't in a situation where we're at step three of the process and it's not clear who could go to arbitration or not. The language that has to be somehow not explicitly stated is the sole and exclusive part, and that's not even what the district court points to. So the other side sort of backfills the idea that somehow that was ambiguous, but that wasn't the basis for the decision below. It found an ambiguity on this irrelevant point, which was wrong, but on this irrelevant point about who can compel arbitration. So this is a textbook case to apply the rule from Steelworkers and Luke that says if you are governed by the alternative dispute resolution process, that is subject to complete preemption and removed to federal court. And then here, because there's no contest about noncompliance with the prerequisites, the case should be dismissed. And that would apply even if the claims that were being raised were not arising from the collective bargaining agreement itself. So even if the other part of Burnside you don't meet, you claim you'd still get preemption because of the grievance process itself. Oh, yes, yes, exactly. And I'll rest on our papers on the construction of the other parts. If for some reason there were no dispute resolution provision that controlled the case, that's fully briefed in the papers. But the easiest and I think legally correct way to handle this case is to say this requires the application of the dispute resolution provision. At worst, it's ambiguous, in which case you have an interpretation question and you are in the second half of Burnside. But I think this is actually just a straightforward Steelworkers Luke case. All right. Thank you very much, counsel. Thank you again. Well argued, well briefed. We appreciate it. A lot of acronyms today, but that's the way it goes. So this particular panel is done for the day. Thank you.
judges: OWENS, SUNG, SANCHEZ